```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
                                        :
In Re: THE ROMAN CATHOLIC DIOCESE OF    :
ROCKVILLE CENTRE, NEW YORK,             :       23cv5541 (DLC)
                                        :       23cv6281 (DLC)
                            Debtor,     :
                                        :       OPINION AND ORDER
----------------------------------------:
                                        :
CLAIMANT NOS. 20018 and 90526,          :
                                        :
                            Appellants, :
                                        :
               -v-                      :
                                        :
THE ROMAN CATHOLIC DIOCESE OF           :
ROCKVILLE CENTRE, NEW YORK,             :
                                        :
                            Appellee.   :
                                        :
----------------------------------------X
```

APPEARANCES:

For Appellant Claimant No. 20018:
Christopher Michael Seleski
Tolmage, Peskin, Harris & Falick
20 Vesey Street
Suite 700
New York, NY 10007

For Appellant Claimant No. 90526:
Derek T. Braslow
Ketterer Browne & Associates, LLC
336 S. Main St.
Suite 2a-C
Bel Air, MD 21014

For Appellee The Roman Catholic Diocese of Rockville Centre, New York:
Corinne Ball
Todd Geremia
Victoria Dorfman
Benjamin Rosenblum
Melanie K. Chan
Jones Day

250 Vesey Street
New York, NY 10281

DENISE COTE, District Judge:

These related bankruptcy appeals were filed on June 28 and July 20, 2023. Claimant Nos. 20018 and 90526 (together, "Claimants" or "Appellants") appeal from a ruling by the Honorable Martin Glenn, Chief U.S. Bankruptcy Judge, dismissing their claims with prejudice in the chapter 11 bankruptcy case concerning The Roman Catholic Diocese of Rockville Centre, New York (the "Diocese" or "Debtor"). For the following reasons, the appeals are denied, and the Bankruptcy Court decision is affirmed.

## Background

The following facts are taken from the record in the underlying bankruptcy case and are undisputed. The Court also takes judicial notice of the existence of judicial decisions and other public filings submitted in the underlying bankruptcy case.

I. Factual Background

The Roman Catholic Church operates through dioceses, each working within a specific geography, under the leadership of archbishops or bishops who are responsible to the Holy See in the Vatican. Debtor is the seat of the Roman Catholic Church

for Nassau and Suffolk Counties in Long Island, New York. The Debtor was established by the Vatican in 1957, from territory that was formerly a part of the Diocese of Brooklyn. When the Debtor was established, it acquired various assets including parishes, schools, camps, and other religious organizations that formerly belonged to the Diocese of Brooklyn. The State of New York established the Diocese as a religious corporation by statute in 1958. See 1958 N.Y. SESS. LAWS Ch. 70 (1958), § 1. The Diocese of Brooklyn continues to exist, serving the boroughs of Brooklyn and Queens.

Claimants each allege that they were sexually abused by an adult that was employed by a parish that belonged to the Diocese of Brooklyn and was later acquired by the Debtor upon its creation. Both claims at issue allege sexual abuse that occurred before the Debtor was established.

II. Bankruptcy Court Proceedings

Following the enactment of the New York Child Victims Act in 2019, which temporarily extended the statute of limitations on certain sexual abuse claims, a large number of such lawsuits were brought by claimants against the Debtor. On October 1, 2020, the Debtor filed a voluntary petition for relief pursuant to chapter 11, title 11, of the United States Code. See In re

Roman Catholic Diocese of Rockville Centre, No. 20-12345 (Bankr. S.D.N.Y. 2020).

On January 27, 2021, the Bankruptcy Court entered an Order Establishing Deadlines for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof ("Bar Date Order"). The Bar Date Order set August 14, 2021 as the deadline for each individual holding a "Sexual Abuse Claim" to file a proof of such claim.[1] The sexual abuse proof of claim form instructs claimants to attach to the claim any "previously filed [] lawsuit against the Diocese in state or federal court."

Claimant No. 20018 timely submitted his proof of claim form, dated April 29, 2021. Claimant No. 20018 alleged that from 1952 to 1953, when he was 10 to 11 years old, he was sexually abused by Fr. Alfred Soave at St. Dominic Catholic Church in Oyster Bay, New York. Claimant No. 20018 noted on the claim form that he had filed a lawsuit against the Diocese of Brooklyn and St. Dominic Catholic Church in New York state court

---

[1] A "Sexual Abuse Claim," as defined in the Bar Date Order, is any claim "against the Debtor resulting or arising in whole or in part, directly or indirectly from any actual or alleged sexual Conduct" which seeks "monetary damages or any other relief, under any theory of liability, including vicarious liability, any negligence-based theory, contribution, indemnity, or any other theory based on any acts or failures to act by the Diocese or any other person or entity for whose acts or failures to act the Diocese is or was allegedly responsible."

related to the sexual abuse alleged in this claim.[2]  Claimant No. 20018 attached the verified complaint in that action to his claim form.

Claimant No. 90526 timely submitted his proof of claim form, dated August 12, 2021.  Claimant No. 90526 alleged that from approximately 1950 to 1951, when he was 15 to 16 years old, he was sexually abused by Fr. Raymond V. Stegmann at St. Boniface Catholic Church in Long Island.  Claimant No. 90526 indicated that he had not previously filed any claims against the Debtor, and he did not attach any civil complaint.

On February 21, 2023, the Bankruptcy Court entered an Amended Order Approving Claim Objection Procedures and Granting Related Relief ("Claim Objection Procedures").  The Claim Objection Procedures allow the Debtor to assert omnibus claim objections on the grounds set forth in Bankruptcy Rule 3007(d), including that "the Debtor is not liable to the claimant for the amount or claim asserted."  See Claims Objection Procedures § 3(a).  The claimant has 21 days to file any response to the objection (a "Response").  Where an objection is contested, the

---

[2] Because the Debtor filed for chapter 11 bankruptcy prior to Claimant No. 20018 filing his state court action, the Debtor could not be named as a defendant in that action.

Bankruptcy Court conducts a Sufficiency Hearing pursuant to Bankruptcy Rule 7012(b).[3]

On March 3, 2023, the Diocese filed its Ninth Omnibus Objection to Claims that Pre-Date the Existence of the Debtor as a Religious Corporation (the "Objection"). The Objection sought dismissal of claims that allege abuse that occurred prior to the date of the Debtor's creation in 1957. The Debtor argued, <u>inter alia</u>, that those claimants had failed to adequately plead that the Diocese is liable for conduct that pre-dates its existence.

On March 24, 2023, both Claimants filed Responses to the Objection. Both Claimants argued that there was insufficient space to allege theories of successor liability on the Sexual Abuse Claim Form. Nevertheless, Claimant No. 20018 argued in his Response that he alleged sufficient facts to state a claim for successor liability against the Debtor because: (1) "In 1957, the Diocese of Rockville Center was created from a portion of the Diocese of Brooklyn and St. Dominic's Catholic Church and Fr. Albert Soave became part of the Debtor;" (2) "On or about 1957, the Diocese of Rockville Centre was formed from the geographical jurisdiction and/or parishes and/or assets and/or liabilities of the Diocese of Brooklyn;" (3) the Debtor did not

---

[3] Claim objections and Responses that raise disputed issues of fact are heard at a Merits Hearing.

"refute anything regarding whether the Debtor expressly or impliedly assumed the liabilities;" and (4) St. Dominic Catholic Church and Fr. Alfred Soave "transferred from the Diocese of Brooklyn to the Debtor."

Claimant No. 90526 also argued in his Response that he had plausibly alleged successor liability.  Claimant No. 90526 reasoned that the Debtor expressly or impliedly assumed the tort liability of the Diocese of Brooklyn because: "[t]here is no evidence that the Debtor did not assume the liabilities of the Diocese of Brooklyn;" "Debtor was carved out of, or in the language of the Vatican, 'separated' from the Brooklyn Diocese;" and because the Debtor had listed Fr. Stegmann on its list of acused clergy, including years that predate Debtor's existence, that was contained in the Debtor's notice of the bar date. Claimant No. 90526 also argued that there was a <u>de facto</u> merger of the Debtor and the Diocese of Brooklyn because "[i]n 1957, the Diocese of Rockville Centre was formed from the geographical jurisdiction of the Diocese of Brooklyn and St. Boniface and Fr. Raymond Stegmann were transferred from the Diocese of Brooklyn to the Debtor in 1957."  Claimant No. 90526's Response relies on the proposition that the proof of claim form assumes that the Claimant alleges successor liability, and that the Debtor failed to refute it.

On April 5, a Sufficiency Hearing was held to determine whether certain contested claims, including those filed by Claimants, failed to state a claim against the Debtor. Counsel for Claimant No. 20018 in the bankruptcy action, Mr. Noaker, argued that the Claimant had sufficiently pled successor liability under the theories of express/implied assumption or <u>de facto</u> merger, and that the Debtor had not "overcome their burden." Mr. Noaker pointed to paragraph seven of the verified complaint attached to claim form No. 20018, which states "[o]n or about 1957, the Diocese of Rockville Centre was formed from the geographical jurisdiction and/or parishes and/or assets and/or liabilities of the Diocese of Brooklyn." Mr. Noaker also argued that the Debtor "assume[d] liability for [the] Diocese of Brooklyn and parishes related because they took over those parishes." He next argued that the theory of <u>de facto</u> merger applies because "the operations of half of [the] Brooklyn [Diocese] were taken over and then continued." Lastly, Mr. Noaker explained that he has "significant concern" that, if the claims against Debtor are disallowed, "then Brooklyn can turn around and say, no, wait a minute, you know, that was, that was a liability or that was assumed by [the Debtor]."

Counsel for Claimant No. 90526, Mr. Braslow, also spoke briefly at the Sufficiency Hearing. He highlighted a document

produced by the Debtor which lists the Debtor's credibly accused clergy, including Fr. Stegmann at St. Boniface Catholic Church. Mr. Braslow noted that the document states that the abuse occurred in 1950 through 1957.  Mr. Braslow thus argued that "in the debtor's own documents, it indicates a credibly accused priest[] and the years, that it was under the control, at least arguably, assuming the liabilities of the Diocese of Brooklyn for this particular priest."

Following the hearing, and at the Bankruptcy Court's request, the Debtor submitted a declaration from its General Counsel, Thomas G. Renker ("Renker Declaration").  The Renker Declaration states that the Diocese did not assume any liabilities from the Diocese of Brooklyn with respect to the parishes and all entities within the territory that formerly belonged to the Diocese of Brooklyn.

On May 26, 2023, the Bankruptcy Court issued a Memorandum Opinion sustaining the Debtor's Objection and dismissing the claims at issue in this appeal with prejudice.  The Bankruptcy Court first noted that "[n]ot a single proof of claim or State Court Complaint sets forth a theory of successor liability." Thus, in determining whether the Claimants had plausibly pled successor liability, the Bankruptcy Court relied "entirely on

those [allegations] contained in the Responses." The Court explained:

> As the Hearing was not evidentiary, the Court did not expect Claimants to submit evidence proving successor liability. But to prevail at a Sufficiency Hearing, the Claimants needed to plead facts which, if true, provide a basis for explicit or implicit successor liability.

The Bankruptcy Court held that the Claimants had failed to plausibly plead successor liability. It stated:

> [T]he proofs of claim and State Court Complaints fail to make any allegations regarding successor liability. The additional allegations made in [R]esponses indicate that the Claimants would not be able to cure these deficiencies if given an opportunity to amend their claims.

Accordingly, the Bankruptcy Court dismissed the claims with prejudice. The Bankruptcy Court issued an accompanying Order on June 9.

III. Appeal

On June 28, 2023, Claimant No. 20018 filed an appeal of the Bankruptcy Court's decision. On July 20, Claimant No. 90526 filed his appeal and a statement of relatedness. That case, 23cv6281, was accepted as related on July 21.

Court Orders of July 20 and July 21 set a schedule for briefing the appeals. The appeals became fully submitted on August 25, 2023.[4]

## Discussion

A bankruptcy court's factual findings are accepted on appeal unless they are clearly erroneous, and its conclusions of law are reviewed de novo. In re DiBattista, 33 F.4th 698, 702 (2d Cir. 2022). As outlined in the Claim Objection Procedures, the legal standard of review at a Sufficiency Hearing is equivalent to the standard applied to a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Claims Objection Procedures § 3(h)(iii); see also Fed. R. Bankr. P. 7012(b). The dismissal of a complaint pursuant to Rule 12(b)(6) is reviewed de novo, "construing the complaint liberally, accepting all factual allegations as true, and drawing all reasonable inferences in the plaintiff's favor." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 230 (2d Cir. 2016).

Appellants raise several arguments in support of their appeal and for reinstatement of their claims. First, they argue that their claim forms or their Responses plausibly pleaded a

---

[4] The Appellants were given an opportunity to submit reply briefs, which were due on September 8, 2023, but chose not to file replies.

basis to assert that the Debtor was a successor to the Brooklyn Diocese, and that the Bankruptcy Court erred in dismissing their claims for failure to adequately plead successor liability. Second, they argue that the Bankruptcy Court committed three procedural errors: (1) providing inadequate space on the claim form to plead successor liability, (2) considering the Renker Declaration, and (3) denying Claimants the opportunity for discovery.  For the following reasons, each of these arguments is without merit, and the appeals are denied.

I.   Failure to State a Claim

The Bankruptcy Court found, and Claimants do not dispute, that federal pleading standards apply to a proof of claim filed in a bankruptcy proceeding.  See also 6 Collier Bankruptcy Practice Guide ¶ 107.03[2] (2023) ("[T]he pleading should assert enough facts to state a claim for relief that is plausible on its face."); In re Residential Cap., LLC, 531 B.R. 1, 12 (Bankr. S.D.N.Y. 2015).

Under Rule 12(b)(6) a party "must plead enough facts to state a claim to relief that is plausible on its face." Green v. Dep't of Educ. of N.Y., 16 F.4th 1070, 1076-77 (2d Cir. 2021) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." Charles v. Orange County, 925 F.3d 73, 81 (2d Cir. 2019) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "In determining if a claim is sufficiently plausible to withstand dismissal," a court "accept[s] all factual allegations as true" and "draw[s] all reasonable inferences in favor of the plaintiffs." Melendez v. City of New York, 16 F.4th 992, 1010 (2d Cir. 2021) (citation omitted). Nevertheless, a court is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." Hamilton v. Westchester County, 3 F.4th 86, 91 (2d Cir. 2021) (citation omitted).

Under New York law, a corporation that purchases the assets of another corporate entity is "generally not liable for the seller's liabilities." New York v. Nat'l Serv. Indus., Inc., 460 F.3d 201, 209 (2d Cir. 2006). Nonetheless, a buyer of a corporation's assets will be liable as its successor if:

> (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

Id. (citation omitted); see also Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 245 (1983). The proponent of successor liability bears the burden of demonstrating "that one

of the aforementioned exceptions to the general rule applies." Call Ctr. Techs., Inc. v. Grand Adventures Tour & Travel Pub. Corp., 635 F.3d 48, 52 (2d Cir. 2011).

Appellants refer on appeal to three of the exceptions identified here. They argue that the Diocese may be liable as a successor to the Brooklyn Diocese because of its express or implied assumption of the liabilities of the Brooklyn Diocese, because it was formed through a de facto merger with the Brooklyn Diocese, or because it was a mere continuation of the Brooklyn Diocese. The second and third tests -- de facto merger and the mere continuation -- are so similar that courts consider them a single exception. Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 45 n.3 (2d Cir. 2003).

A. Express or Implied Assumption

To determine whether a successor corporation expressly assumed the liability of its predesessor, courts look to the relevant contractual language. See, e.g., In re Stone & Webster, Inc., 558 F.3d 234, 243 (3d Cir. 2009); Mitchell Mach., Inc. v. Ford New Holland, Inc., 918 F.2d 1366, 1369 (8th Cir. 1990). In the absence of an express or formal assumption of liability, an implied assumption "may be established by circumstantial evidence." 8 Fletcher Cyclopedia of the Law of Corporations § 4014 (2023). "[T]he facts upon which the

implication or presumption of liability is predicated must affirmatively appear from the pleadings and proof." Id.

Claimants argue that the Debtor expressly or impliedly assumed the Diocese of Brooklyn's liabilities because, upon its creation, the Diocese acquired assets, including parishes, priests and good will of the Diocese of Brooklyn, and paid nothing for them. Claimant No. 90526 also argues that "no agreement exists that states the Diocese [] did not assume the liabilities" of the Brooklyn Diocese. These argument fail. Claimants have pointed to no contractual language or circumstantial evidence which suggests that the Debtor assumed any liabilities from the Brooklyn Diocese. Moreover, as discussed supra, it is the Claimants' burden to plead liability and not the Debtor's burden to refute it.

B.   De Facto Merger and Mere Continuation

"[A] de facto merger occurs when a transaction, although not in form a merger, is in substance a consolidation or merger of seller and purchaser." New York, 460 F.3d at 209 (citation omitted). At common law, the hallmarks of a de facto merger include:

> (1) continuity of ownership; (2) cessation of ordinary business and dissolution of the acquired corporation as soon as possible; (3) assumption by the purchaser of the liabilities ordinarily necessary for the uninterrupted continuation of the business of the acquired corporation; and (4) continuity of

15

>    management, personnel, physical location, assets, and general business operation.

Id. These factors must be "analyzed in a flexible manner that disregards mere questions of form and asks whether, in substance, it was the intent of the successor to absorb and continue the operation of the predecessor." Dutton v. Young Men's Christian Ass'n of Buffalo Niagara, 171 N.Y.S.3d 276, 280 (4th Dept. 2022) (citation omitted). Nevertheless, a prerequisite to a finding of a de facto merger is that "only one corporation survives the transaction; the predecessor corporation must be extinguished." Schumacher, 451 N.E.2d at 198.

Neither of the Claimants adequately pleaded that the Debtor was liable as a successor to the Brooklyn Diocese under this theory. The claims each acknowledged that the abuse had occurred before the creation of the Diocese, at a time that the parish was part of the Brooklyn Diocese and the abuser was employed by the Brooklyn Diocese. Both of the claims explained that the abuser later worked for the Debtor. Neither claim, nor the Responses to the Debtor's Objection contain sufficient factual allegations to support the de facto merger theory of successor liability. There is no dispute that the predecessor corporation -- the Brooklyn Diocese -- continues to exist. It was not extinguished by the creation of the Debtor.

Accordingly, the Bankruptcy Court did not err in concluding that the Claimants failed plausibly to state a claim of successor liability.

II.  Procedural Challenges

Appellants next raise a series of procedural challenges. First, that the Claim Form was defective because it did not allow for a statement of theories of successor liability. Second, that the Bankruptcy Court impermissibly considered the Renker Declaration.  And third, that the Bankruptcy Court erred in denying the Claimants discovery on the issue of successor liability.  The Appellants' arguments fail.

Since Claimants were permitted the opportunity to plead successor liability in their Responses, the arguments about the format of the Sexual Abuse Claim Form fail.  The Bankruptcy Court expressly considered the Responses in its evaluation of the sufficiency of the Claimants' allegations, and noted that "[t]he additional allegations made in [R]esponses indicate that the Claimants would not be able to cure these deficiencies if given an opportunity to amend their claims."  Somewhat surpisingly, Claimant No. 20018 argues that it was error for the Bankruptcy Court to consider Claimants' Responses under Rule 12(b)(6).  The Bankruptcy Court's consideration of the Responses

was of assistance to the Claimants and also a permissible exercise of discretion for a court sitting in equity.

Second, and contrary to the Claimants' assertions, the Bankruptcy Court did not rely on the Renker Declaration in making its determination that "[t]he proofs of claim and State Court Complaints make no allegations whatsoever as to successor liability, let alone any of the exceptions providing for it." Rather, the court noted only that the Renker Declaration provided "additional comfort" that the Debtor had not assumed liabilities from the Diocese of Brooklyn, and added in dicta that, had the Objection been subjected to a "Merits Hearing that required the Debtor to refute an essential element of the Claim with evidence," the Debtor has satisfied that burden with the Renker Declaration.  Thus, the Bankruptcy Court did not err in its application of Rule 12(b)(6), Fed. R. Civ. P.

Finally, the Bankruptcy Court properly denied discovery. The Supreme Court in Twombly noted that "proceeding to []discovery can be expensive" and prescribed that a "court must retain the power to insist upon some specificity in pleading before allowing a potentially massive factual controversy to proceed."  550 U.S. at 558 (citation omitted).  Here, the Bankruptcy Court's conclusion that no plausible claim for relief has been pled justifies the denial of discovery.  Id. at 559;

see also Iqbal, 556 U.S. at 686 ("Because respondent's complaint is deficient under Rule 8, he is not entitled to discovery, cabined or otherwise."). Thus, the Bankruptcy Court's denial of discovery is affirmed.

## Conclusion

The Claimants' appeals are denied. The June 9, 2023 Order of the United States Bankruptcy Court for the Southern District of New York dismissing claims no. 20018 and 90526 with prejudice under Federal Rule of Civil Procedure 12(b)(6) is affirmed.

Dated:   New York, New York
         October 6, 2023

                                    _____
                                    DENISE COTE
                                    United States District Judge